**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **CYBERCODERS, INC.,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **NO. 4:24-mc-00001** |
| | § | |
| **UNITED STATES DEPARTMENT OF LABOR, et al.,** | § | |
| | § | |
| | § | |
| **Respondents.** | § | |
| | § | |

<u>**PETITIONER CYBERCODERS, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO QUASH THE UNITED STATES DEPARTMENT OF LABOR WAGE AND HOUR DIVISION'S SUBPEONA *DUCES TECUM***</u>

Kimberly R. Miers
State Bar No. 24041482
kmiers@littler.com
Ross G. Reyes
State Bar No. 24105707
rgreyes@littler.com

Littler Mendelson, P.C.
100 Congress Avenue, Suite 1400
Austin, TX 78701
512.982.7250
512.982.7248 (Fax)

*Mailing Address for Ross G. Reyes*

Littler Mendelson, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201.2931
214.880.8100
214.880.0181 (Fax)

**ATTORNEYS FOR PETITIONER**

# TABLE OF CONTENTS

PAGE

I.      INTRODUCTION ................................................................................................... 1

II.     STATEMENT OF FACTS ...................................................................................... 2

        A.      CyberCoders' Operations and Relevant Policies. .................................... 2

        B.      The Division's Investigation and CyberCoders' Extensive Production
                from December 2022 to June 2023. ......................................................... 3

        C.      The Division's November 2023 Subpoena and Impractical Demands for
                Massive Production of Wholly Irrelevant Data. ...................................... 4

        D.      Status of Subpoena and Response Deadline. ............................................ 7

III.    APPLICABLE LEGAL STANDARDS ................................................................. 8

IV.     ARGUMENT ........................................................................................................ 10

        A.      The Subpoena Should Be Quashed Because It Has an Invalid Purpose and
                Does Not Relate to the Division's Investigation of Whether CyberCoders
                Violated the FLSA. ................................................................................. 10

                1.      The Administrator Has Instructed that Employers with
                        Timekeeping Procedures Like CyberCoders Are Not Required to
                        Investigate Use of Electronic Systems to Uncover Time Worked. ......... 10

                2.      The Demanded Materials Are Irrelevant to Whether CyberCoders
                        Violated the FLSA. ..................................................................... 13

                3.      The Demanded Materials Are Irrelevant Given CyberCoders'
                        Policy and Practice of Investigating Employee Concerns
                        Regarding Compensation and Providing Corrected Compensation
                        as Needed. .................................................................................. 15

        B.      The Subpoena Should Be Quashed Because It Violates the APA as an
                Unannounced and Unjustified Change in DOL Policy. ........................... 18

        C.      The Subpoena Should Be Quashed, and/or a Protective Order Should Be
                Entered Because the Demands Are Overbroad and Unduly Burdensome. ........... 19

        D.      Venue Properly Lies with this Court. ..................................................... 23

V.      CONCLUSION .................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acosta v. Fusilli at Miller Place, Inc., No. 18-MC-426 (DRH)(SIL),*
  2018 WL 4635735 (E.D.N.Y. May 7, 2018) ........................................................21

*Acosta v. La Piedad Corp.,*
  894 F.3d 947 (8th Cir. 2018) ...........................................................9, 12, 20

*Allen v. City of Chicago,*
  865 F.3d 936 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 1302 (2018)........................................12

*Auer v. Robbins,*
  519 U.S. 452 (1997)........................................................................13

*Bowles v. Seminole Rock & Sand Co.,*
  325 U.S. 410 (1945)........................................................................13

*Brumbelow v. Quality Mills, Inc.,*
  462 F.2d 1324 (5th Cir. 1972) ..............................................................16

*Carpenter v. United States,*
  138 S. Ct. 2206 (2018)......................................................................22

*Castellanos-Contreras v. Decatur Hotels LLC,*
  622 F.3d 393 (5th Cir. 2010) (Dennis, J., dissenting)..........................................13

*Continental W. Ins. Co. v. Liepke Invs., Ltd.,*
  No. 3:10-CV-1701-P, 2011 WL 13216993 (N.D. Tex. Mar. 8, 2011) ....................................25

*Davis v. Food Lion,*
  792 F.2d 1274 (4th Cir. 1986) ..............................................................17

*Donovan v. Lone Steer, Inc.,*
  464 U.S. 408 (1984)........................................................................23

*E.E.O.C. v. Sears, Roebuck & Co.,*
  No. CIV.A10CV00288WDMKMT, 2010 WL 2692169 (D. Colo. Jun. 8,
  2010) ....................................................................................20

*Fairchild v. All Am. Check Cashing, Inc.,*
  815 F.3d 959 (5th Cir. 2016) ..............................................................2, 14, 16, 17

*FCC v. Fox TV Stations, Inc.*,
    556 U.S. 502 (2009)..................................................................................................19

*Frye v. Baptist Mem'l Hosp., Inc.*,
    No. 07-2708, 2010 WL 3862591 (W.D. Tenn. Sep. 27, 2010)...............................16

*Goldberg v. Wharf Constructers*,
    209 F. Supp. 499 (N.D. Ala.1962).........................................................................24

*Hendricks v. Total Quality Logistics, LLC*,
    275 F.R.D. 251 (S.D. Ohio 2011) ..........................................................................20

*Herman v. Crescent Publ'g Grp., Inc.*,
    No. 00 CIV. 1665 SAS, 2000 WL 1371311 (S.D.N.Y. Sept. 21, 2000) ................21

*Ihegword v. Harris Cnty. Hosp. Dist.*,
    929 F. Supp. 2d 635 (S.D. Tex. 2013), *aff'd*, 555 F. App'x 372 (5th Cir. 2014) .............15, 17

*Johnson v. Cameron Int'l Corp.*,
    No. H-16-262, 2017 WL 3658901 (S.D. Tex. Aug. 24, 2017) ................................14

*Katz v. United States*,
    389 U.S. 347 (1967)................................................................................................22

*Kirk v. Invesco, Ltd.*,
    No. H-15-833, 2016 WL 4394336 (S.D. Tex. Aug. 18, 2016), *aff'd*, 700 Fed.
    Appx. 334 (5th Cir. 2017).......................................................................................15

*Kisor v. Wilkie*,
    139 S. Ct. 2400 (2019)...........................................................................................13

*Lockhart v. Republic Servs.*,
    No. SA-18-CA-766-XR, 2020 WL 2308438 (W.D. Tex. May 8, 2020), aff'd
    No. 20-50474, 2021 WL 4955241 (5th Cir. Oct. 25, 2021) ..................................12

*McLane Co. v. E.E.O.C.*,
    581 U.S. 72 (2017)...............................................................................................9, 10

*Miller v. Texoma Med. Ctr., Inc.*,
    No. 4:13CV32, 2015 WL 5604676 (E.D. Tex. 2015)............................................17

*Mosley-Lovings v. AT&T Corp.*,
    No. 3:38-CV-01145-X, 2020 WL 6865785 (N.D. Tex. July 31, 2020)...................14

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1986).............................................................................................18, 19

*New Orleans Pub. Serv., Inc. v. Brown*,
    507 F.2d 160 (5th Cir. 1975), *Superseded by statute on other grounds, as
    recognized in Dresser Indus. Valve Operations v. E.E.O.C.*, 613 F. Supp. 1
    (W.D. La. 1984) ................................................................................................23

*Newton v. City of Henderson*,
    47 F.3d 746 (5th Cir. 1995) ...................................................................14, 16

*Nieddu v. Lifetime Fitness, Inc.*,
    38 F. Supp. 3d 849 (S.D. Tex. 2014) .....................................................14, 16

*Okla. Press Pub. Co. v. Walling*,
    327 U.S. 186 (1946).............................................1, 2, 8, 9, 10, 19, 20

*Pickney v. Express Auto. Grp., Inc.*,
    No. 4:13-CV-02031, 2014 WL 4794587 (S.D. Tex. Sep. 25, 2014) .......................17

*S. Int'l Trade Comm'n v. ASAT, Inc.*,
    411 F.3d 245 (D.C. Cir. 2005)...........................................................24

*TIG Insurance v. NAFCO Insurance*,
    177 F. Supp. 2d 561 (N.D. Tex. 2001) ...............................................25

*United States v. Morton Salt Co.*,
    338 U.S. 632 (1950).......................................................8, 9, 19, 20

*United States v. Transocean Deepwater Drilling, Inc.*,
    767 F.3d 485 (5th Cir. 2014) .............................................................10

*Walsh v. Katsilometes*,
    No. 20-36002, 2021 WL 4811376 (9th Cir. Oct. 15, 2021) (unpublished) ...........................22

*Winters Ranch P'ship v. Viadero*,
    123 F.3d 327 (5th Cir.1997) ..................................................................9

**Statutes**

5 U.S.C.S. § 553(c) and § 706 ...................................................................18

15 U.S.C. § 49......................................................................................8, 9

15 U.S.C. § 49, Title 15 ...........................................................................8

28 U.S.C. § 1391(b) .................................................................................24

28 U.S.C. § 1391(b)(2) .............................................................................24

29 U.S.C. §§ 201 *et seq.*..........................................................................1

29 U.S.C. § 209 ..................................................................................................8, 9

29 U.S.C. § 211 ................................................................................................8, 14

29 U.S.C. 255(a) ...................................................................................................21

**Other Authorities**

FED. R. CIV. P. 45(c)(2)(b) ......................................................................................24

FED. R. CIV. P. 45(d)(1) .........................................................................................20

FED. R. CIV. P. 45(d)(3) .........................................................................................23

Petitioner CyberCoders, Inc. ("CyberCoders") files this Brief in Support of Its Motion to Quash and respectfully shows as follows:

## I.    INTRODUCTION

CyberCoders has accommodated and complied with the Division's investigation for more than one year, beginning in December 2022. On November 13, 2023, the Division, without prior notice, provided a subpoena demanding an unbridled production of CyberCoders' electronic records covering 765 remote workers across 36 states since December 2019. CyberCoders does not dispute the Division has authority to issue administrative subpoenas for records in connection with investigating alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (FLSA). However, the Division's power to issue subpoenas is not without limitation. Specifically, the subpoena must be procedurally compliant, conform with all applicable rules and statutes, seek information and records relating to the Division's investigation, and take into consideration the burden placed on CyberCoders in complying with the subpoena. *See Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 208-09 (1946).

The subpoena at issue lacks a valid purpose and is unrelated to the Division's investigation of whether CyberCoders violated the FLSA, as the Administrator has specifically instructed that employers like CyberCoders who provide a reasonable timekeeping procedure and pay for all hours reported by remote employees do not violate the FLSA where employees fail to report time unless the employer interfered with accurate timekeeping or had "knowledge" of unreported work. APP. 1–4.[1] The subpoena also violates the Administrative Procedure Act (APA) as an unannounced and unjustified change in the Division's enforcement policy. The Division's official policy is employers have no liability for the activities of remote workers who disregard their

---

[1] DOL-WHD Field Assistance Bulletin (FAB) No. 2020-5 (8/24/20) (the "Bulletin")

employer's written policies and directions to not use company equipment during non-work hours and to accurately report their work time to the company.

Despite the Division's policy, the subpoena to CyberCoders demands the collection, review, and production of *all* electronic communications, phone calls, and activity on CyberCoders' historic and current electronic systems by 765 remote employees across 36 states over a four-year period. Ironically, the information sought is precisely data the Division has instructed that employers are not liable for monitoring. Further, due to the overbroad scope of the demands – which include producing more than 5.5 million records and 5.7 petabytes of data; incurring more than 2,085 labor hours; engaging a specialized Enterprise Vault consultant; and spending more than $330,000 – compliance would unduly burden CyberCoders.

In short, the subpoena fails the Supreme Court's established test for enforcement of administrative subpoenas. *See Walling*, 327 U.S. at 208-09. Consequently, the subpoena is invalid and should be quashed, in whole or in part, and the Division should be otherwise enjoined from pursuing the demanded materials.

## II.   STATEMENT OF FACTS

### A.   CyberCoders' Operations and Relevant Policies.

CyberCoders is a recruiting firm specializing in locating and filling open job positions across all industries, including finance, education, engineering, and healthcare. APP. 5.[2] CyberCoders takes pride in its focus on employee development by creating a culture focused on employee health, well-being, and lifelong learning, as well as by offering the flexibility for its employees to work remotely from anywhere. *See* https://www.cybercoders.com/careers/ (accessed 1/2/24). As a result of its continuing efforts to put employees first, CyberCoders was recognized

---

[2] Declaration of Jennifer Brink ("Brink Decl.") ¶ 4.

as an employer of choice, winning the Top Workplace Cultural Excellence Awards for Remote Work, Professional Development, and Employee Well-Being. *Id*.

CyberCoders employs professional recruiters nationwide, who work remotely from their homes (or wherever they choose). APP. 5.[3] CyberCoders' non-exempt recruiters are paid on an hourly basis, with overtime in compliance with the FLSA and other applicable laws. APP. 5.[4] CyberCoders maintains written policies regarding timekeeping and time reporting, which it provides to employees upon hire and makes available via the company intranet. APP. 6;[5] APP. 1–4.  These policies plainly state non-exempt employees must report to the company all time worked and are prohibited from working without reporting the time worked. APP. 18.[6]

### B.   The Division's Investigation and CyberCoders' Extensive Production from December 2022 to June 2023.

In December 2022, the Division's Orange County, California, office notified CyberCoders of an open investigation regarding the company's compliance with the FLSA and demanded that CyberCoders produce sixteen categories of documents and information for all its employees from December 2019 through December 2022. APP. 6–7;[7] APP. 22–24.  For roughly one year, CyberCoders complied with the nationwide investigation, and produced all potentially relevant policies and time and pay records for all non-exempt employees. APP. 7–10.[8] CyberCoders' efforts included its Vice President of Human Resources working from December 12, 2022, through April 2023 to diligently locate, retrieve, and prepare extensive responses (totaling 162.12 megabytes of

---

[3] Brink Decl. ¶ 5; *see also* https://www.cybercoders.com/recruiter/) (accessed 1/2/24).
[4] Brink Decl. ¶ 6.
[5] *Id*. ¶ 9
[6] Brink Decl. Ex. 1, p. 5.
[7] Brink Decl. ¶ 11.
[8] Brink Decl. ¶¶ 14–25.

data) to fully satisfy the Division's production demands. APP. 7–10;[9] APP. 25–42.[10]

Following CyberCoders' incredible production which ended in April 2023, the Division investigator requested data from CyberCoders' proprietary Cyrus system. APP. 10–11.[11] CyberCoders responded, explaining the requested Cyrus data is irrelevant because said data is not time records, and the DOL's guidance states companies are not required to monitor such data. APP. 11.[12] The Division last communicated regarding this matter in June 2023. APP. 11.[13]

### C. The Division's November 2023 Subpoena and Impractical Demands for Massive Production of Wholly Irrelevant Data.

On November 13, 2023, without prior notice to CyberCoders,[14] the Division provided CyberCoders' general counsel with a subpoena *duces tecum*. APP. 11.[15] Before serving the subpoena, the Division never requested CyberCoders to produce the materials described in the subpoena – other than the Cyrus records, which CyberCoders previously explained are not time records and neither relevant to the DOL's investigation nor a substitute for records prepared by CyberCoders' employees. APP. 11.[16] All potentially relevant policies, pay records showing all payments by CyberCoders, and time records showing all time reported by employees (totaling 162.12 megabytes of data) have already been produced to the Division. APP. 7–42.[17]

---

[9] Brink Decl. ¶¶ 14–25.
[10] Brink Decl. Exs. 3–11 (nine Case Receipts generated by the DOL's External User Portal, evidencing the Division's receipt of extensive files comprising all potentially relevant data
[11] Brink Decl. ¶¶ 24-26.
[12] *Id*., ¶¶ 26-28.
[13] *Id*., ¶¶ 28-29.
[14] In its Field Operations Handbook ("FOH"), dated 9/29/2016, at Chapter 86b00, the DOL advised its investigators that subpoenas are not typically necessary for an effective investigation, and investigators should "make reasonable efforts to work cooperatively with persons from whom they are requesting information" and "are encouraged to . . . identify ways to obtain information without the use of subpoena." APP. 95. However, the DOL inexplicably omits Chapter 86 in the current FOH. *See* https://www.dol.gov/agencies/whd/field-operations-handbook (accessed 1/3/24).
[15] Brink Decl. ¶ 29.
[16] *Id*., ¶¶ 26-28, 30.
[17] *Id*., ¶¶ 14-25 and Exs. 1 to 11.

The subject subpoena includes four categories of documents, which demand, in essence, all electronic records of any activities taken by 765 employees working remotely across 36 states for over a four-year period, from December 12, 2019, to the present:[18]

> 1. All Documents and Electronic Files concerning daily phone call logs, including all phone call logs created, maintained or reportable by Cyrus and RingCentral, for each of the CyberCoders employees identified in Attachment #2, indicating the date and the start and stop time of each phone call (including the respective time zone), for the requested Subject Period.

> 2. All Documents and Electronic Files, including Documents and Electronic Files created, maintained or reportable by Cyrus, showing daily time spent logged into Cyrus for each of the Cy-berCoders employees identified in Attachment #2, indicating the dates and times of the log-in and log-out (including the respective time zone), for the requested Subject Period.

> 3. All CyberCoders reports created or generated during the Subject Period (or the Electronic Files in existence during the Subject Period that could have been run to generate such reports) that contain any Cyrus phone call log information, including information on time spent logged into Cyrus, for each of the CyberCoders employees identified in Attachment #2.

> 4. All Documents and Electronic Files sufficient to show daily communications, including e-mail and LinkedIn Recruiter messages, sent by each of the CyberCoders employees identified in Attachment #2 on the following days and times in the respective time zone of the employee during the requested Subject Period:

> > • Monday through Friday before 8:00 a.m.
> > • Monday through Friday between 12:00 p.m. and 1:00 p.m.
> > • Monday through Friday after 5:00 p.m.
> > • Saturday and Sunday all hours

> The produced Documents and Electronic Files shall indicate at a minimum the full name of the employee, employee identification number, business phone number or "@cybercod-ers.com" email address associated with an account or communication, the type of communication, the date and time of the communication, and the

---

[18] The employees identified in Attachment #2 to the Division's subpoena work or worked across the following 35 states and the District of Columbia: California, Colorado, Connecticut, Florida, Georgia, Hawaii, Louisiana, Iowa, Idaho, Illinois, Indiana, Kentucky, Massachusetts, Maryland, Maine, Mississippi, Minnesota, North Carolina, New Hampshire, New Jersey, New Mexico, Nevada, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, and Wisconsin. APP. 5 (Brink Decl. ¶ 7).

respective time zone of the employee.

APP. 43–75. As detailed in the accompanying declaration of Kenneth Brotherton ("Brotherton Decl."), compliance with the Division's demands would require CyberCoders to restore, search, and produce massive amounts of responsive materials comprising more than 5.5 **million** RingCentral records, 5.7 **petabytes** of Cyrus data (the equivalent of 1.425 **billion** copies of The Complete Sherlock Holmes collection), 5.35 **million** emails (approximately 375 **gigabytes** of data), and 18 **million** LinkedIn InMail messages. APP. 79–83.[19]

"Cyrus" is defined in the subpoena as the "recruiting software platform used by CyberCoders, Inc. employees for workflow management and optimization, recruitment, communication, and tracking communication with job applicants." APP. 79;[20] APP. 46. Cyrus is better described as CyberCoders' proprietary recruiting software that uses unique algorithm and automation features to help recruiters maximize their work to fill jobs faster and more accurately. APP. 79.[21] One proprietary aspect of Cyrus is that it tracks daily activity, but the system does not exclude time spent on non-work-related activities. APP. 79–80.[22]

"RingCentral" or "RingCentral app" is defined in the subpoena as "the Voice over Internet Protocol (VoIP) application used by CyberCoders, Inc. employees on computers, laptops, and mobile phones, for business communications, tracking communications, analyzing communication, and reporting on communications by CyberCoders employees." APP. 78;[23] APP. 46.  RingCentral is better defined as a cloud-based communication service used by CyberCoders'

---

[19] Brotherton Decl. ¶¶ 15, 23, 31, 34, 40.
[20] Brotherton Decl. ¶ 18.
[21] Brotherton Decl. ¶ 19. An informative video concerning Cyrus is available online at https://www.cybercoders.com/insights/how-this-cutting-edge-recruiting-technology-matches-the-best-candidates-fast/ (accessed 1/2/24).
[22] Brotherton Decl. ¶ 21.
[23] Brotherton Decl. ¶ 11.

employees, including recruiters, to make and receive phone calls as well as send and receive text messages. APP. 78.[24]

"LinkedIn" or "LinkedIn Recruiter" in the subpoena refers to the online social media platform available to the public for networking and may be used by CyberCoders' recruiters for work purposes (and personal purposes). APP. 82.[25]

As explained below, the Division's requests are overly broad and seek information that does not affect CyberCoders' liability under the FLSA for alleged unpaid overtime.

### D.    Status of Subpoena and Response Deadline.

The week before Thanksgiving, and without any prior notice or request for the sought-after information, the Division provided the subpoena to CyberCoders' general counsel on November 13, 2023, setting November 28, 2023, as the deadline for compliance. APP. 11;[26] APP. 43–75. Because of the short compliance deadline and upcoming Thanksgiving holiday, as well as CyberCoders' business closure for the winter holidays, counsel notified the Division it represented CyberCoders regarding the Division's investigation and requested, and was granted, an extension to January 12, 2024, to respond to the subpoena.

On January 12, 2024, CyberCoders' counsel served a copy of its Objections to the subpoena on the Division. APP. 89–94. The Objections demonstrate and explain why the subpoena is invalid, does not have a valid purpose, seeks materials irrelevant to whether CyberCoders violated the FLSA, and compliance therewith would be unreasonably burdensome. On Friday, January 12, 2024, counsel for CyberCoders contacted the Division to schedule a meet and confer regarding the subpoena.  Counsel for CyberCoders again contacted the Division on Tuesday,

---

[24] Brotherton Decl. ¶ 12.
[25] Brotherton Decl. ¶ 38.
[26] Brink Decl. ¶ 29.

January 16, 2024, to schedule a meet and confer with the Division to discuss CyberCoders'
concerns regarding the subpoena. The Division has not responded to CyberCoders' counsel,
therefore requiring this motion.

## III.    APPLICABLE LEGAL STANDARDS

The DOL is authorized to investigate compliance with and violations of the FLSA, *see* 29
U.S.C. § 209—which the DOL-WHD has been doing with CyberCoders for a year in connection
with alleged unpaid overtime worked by recruiters. The FLSA provides the Administrator or his
designated representatives "may investigate and gather data regarding the wages, hours, and other
conditions and practices of employment" in covered industries, and may "investigate such facts,
conditions, practices, or matters as he may deem necessary or appropriate **to determine whether
any person has violated any provision of this chapter**." 29 U.S.C. § 211 (emphasis added). To
that end, the DOL is vested with the authority to issue subpoenas requiring "attendance and
testimony of witnesses and the production of all such documentary evidence relating to any matter
under investigation." 15 U.S.C. § 49.[27]

The DOL's authority is not without limitation; "the Fourth Amendment requires that the
subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that
compliance will not be unreasonably burdensome." *See v. City of Seattle*, 387 U.S. 541, 544 and
n.5 (1967) (concluding that business owners have a constitutional right to insist on city obtaining
a warrant to search warehouse) (string-citing Supreme Court precedent, including *Walling*, 327
U.S. 186; *United States v. Morton Salt Co*., 338 U.S. 632 (1950)). The agency "has the right to

---

[27] Title 15 relates to the Federal Trade Commission, but Congress expressly made these provisions
available to the DOL pursuant to the FLSA. *See* 29 U.S.C. § 209 ("For the purpose of any hearing
or investigation provided for in this chapter, the provisions of [15 U.S.C. § 49] . . . are made
applicable to the jurisdiction, powers, and duties of the Administrator [and] the Secretary of Labor
. . . .").

conduct all **reasonable** inspections of such documents **which are contemplated by statute**" but must be in the form of a "formal" administrative subpoena "issued by the agency . . . it may not be made and enforced by the inspector in the field." *See*, 387 U.S. at 544-45 (emphasis added). Subpoenas issued under these provisions are enforceable in "any court of the United States . . .." 15 U.S.C. § 49. *See also,* 29 U.S.C. § 209 (FLSA provision incorporating 15 U.S.C. § 49).

The Division's subpoena is enforceable only if the Court determines that a four-part test has been satisfied: (1) the subpoena was issued under lawful authority, (2) the subpoena was issued for a lawful purpose, (3) the subpoena requests information relevant to the lawful purposes, (4) and the disclosure sought is not unreasonably burdensome. *See Walling*, 327 U.S. at 208-09; *Morton Salt,* 338 U.S. at 652-53; *See*, 387 U.S. at 544-45;[28] *see also Winters Ranch P'ship v. Viadero*, 123 F.3d 327, 329 (5th Cir.1997) (setting out the *Walling* test). The DOL is prohibited from using its subpoena power as a "fishing expedition." *Acosta v. La Piedad Corp.*, 894 F.3d 947, 953 (8th Cir. 2018) ("What DOL's statutory authority and pertinent contempt precedents do not permit is a fishing expedition in which the agency uses a judicial contempt order to compel [the company] to play the role of involuntary fisherman.").[29]

Determining whether an administrative subpoena satisfies the *Walling* test is "well suited to a district judge's expertise." *McLane Co. v. E.E.O.C.*, 581 U.S. 72, 73 (2017), as revised (Apr. 3, 2017) (holding district court orders concerning administrative subpoenas are reviewed under an

---

[28] In *Walling*, the Supreme Court held that an agency's statutorily authorized request for relevant disclosure must not be unreasonable. 327 U.S. at 208. The *Walling* standard was streamlined in *Morton Salt*, in which the Court held that an administrative subpoena is enforceable only where the inquiry is within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant. 338 U.S. at 652.

[29] The Eighth Circuit in *Acosta* found the district court misused its civil contempt power by enforcing the DOL's administrative subpoena requesting shareholder documents not in the investigated company's possession or control. 894 F.3d at 952-53.

abuse of discretion standard). The determination "requires the district court to evaluate the relationship between the particular materials sought and the particular matter under investigation—an analysis 'variable in relation to the nature, purposes and scope of the inquiry.' [*Walling*, 327 U.S. at 209]." *McLane*, 581 U.S. at 73. "And whether a subpoena is overly burdensome turns on the nature of the materials sought and the difficulty the employer will face in producing them—"'fact-intensive, close calls . . ..'" *Id.* "The Government bears the initial burden to show that these criteria have been met, although the burden to make a prima facie case is minimal." *United States v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 489 (5th Cir. 2014) (internal citations omitted). "Once the Government has made a prima facie case, the burden of going forward shifts to the party opposing the subpoenas." *Id.*

Here, it is within this Court's sound discretion to determine CyberCoders' motion and find that the Division's subpoena fails to satisfy the *Walling* test, as it was not issued under lawful authority, was not issued for a lawful purpose, does not seek materials relating to a lawful purpose, and compliance would be unduly burdensome.

## IV. ARGUMENT

### A. The Subpoena Should Be Quashed Because It Has an Invalid Purpose and Does Not Relate to the Division's Investigation of Whether CyberCoders Violated the FLSA.

#### 1. The Administrator Has Instructed that Employers with Timekeeping Procedures Like CyberCoders Are Not Required to Investigate Use of Electronic Systems to Uncover Time Worked.

The DOL-WHD Administrator has instructed Regional Administrators how to handle investigations which (like the investigation here) are aimed at investigating whether remote employees were not paid for all time worked. *See* APP. 1. (stating intent to guide employers' duty under the FLSA "to track the number of hours of compensable work performed by employees who are teleworking or otherwise working remotely away from any worksite"). The Bulletin

specifically tells Regional Administrators what records are relevant in circumstances like this. *See* APP. 1.

The Bulletin explains that the FLSA requires employers to pay employees for all hours worked, including work performed at home "[i]f the employer knows or has reason to believe that work is being performed" and not reported. APP. 1. The Bulletin clarifies that employers do *not* have to track circumstantial evidence of unreported time worked by remote employees, providing that **where: (a) an employer provides a "reasonable reporting procedure for non-scheduled time and then compensat[es] employees for all reported hours of work, even hours not requested by the employer," and (b) an "employee fails to report unscheduled hours worked through such a procedure," then (c) "the employer is not required to undergo impractical efforts to investigate further to uncover unreported hours of work and provide compensation for those hours.**" APP. 1 (emphasis added). Where, as is the case here, the employer's reasonable reporting procedure allows remote employees to freely report time worked to the company and the company has time and pay records showing all time reported was paid, **the only further relevant inquiry is whether "the employer either prevents or discourages an employee from accurately reporting the time he or she has worked.**" APP. 1 (emphasis added).

The policy stated in the Bulletin recognizes "an employer cannot make any effort—let alone every effort—to prevent unwanted work unless 'the employer knows or has reason to believe the work is being performed.'" APP. 3.[30] The Administrator states the DOL's policy regarding when an employer like CyberCoders is considered to have "knowledge of" work by remote workers, including for "regularly scheduled hours, … employee reports or other notifications." APP. 3. An employer is considered to have constructive knowledge of work by remote employees

---

[30] (citing 29 C.F.R. § 785.12).

when it "should have acquired knowledge of such hours through reasonable diligence;" however,

the employer is only liable for what it "*should* have known, not what 'it *could* have known.'" APP.

3.[31] The DOL's policy states as follows:

> [I]f an employee fails to report unscheduled hours worked through such a procedure, the **employer is generally not required to investigate further to uncover unreported hours**. . . . **Though an employer may have access to non-payroll records of employees' activities, such as records showing employees accessing their work-issued electronic devices outside of reported hours, reasonable diligence generally does not require the employer to undertake impractical efforts such as sorting through this information** to determine whether its employees worked hours beyond what they reported. *See, e.g.,* [*Allen*, 865 F.3d] at 945 (affirming that the district court reasonably found that **employer did not need to cross-reference "phone records** or supervisors' knowledge of overtime to ensure that its employees were reporting their time correctly"); *Hertz* [*v. Woodbury Co., Iowa*, 566 F.3d 775, 782 (2009)] ("**It would not be reasonable to require that the County weed through non-payroll CAD records** to determine whether or not its employees were working beyond their scheduled hours."); *Newton v. City of Henderson*, 47 F.3d 746, 749 (5th Cir. 1995) ("We hold that as a matter of law such **'access' to information [regarding activities performed by plaintiff] does not constitute constructive knowledge** that Newton was working overtime.").

APP. 3–4.[32] An employer without "knowledge" of work performed by remote workers "does **not**

violate the FLSA." APP. 4 (emphasis added); s*ee also Lockhart v. Republic Servs.*, No. SA-18-

CA-766-XR, 2020 WL 2308438, at *28 (W.D. Tex. May 8, 2020), aff'd No. 20-50474, 2021 WL

4955241 (5th Cir. Oct. 25, 2021) ("In other words, an employer cannot be held liable

for FLSA violations unless it has actual or constructive knowledge of an employee's overtime

work.").

The DOL has not revised or rescinded the Bulletin, and it determines the lawful authority

---

[31] *Id*. (emphasis added) (*citing Allen v. City of Chicago*, 865 F.3d 936, 943 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 1302 (2018)).

[32] (emphasis added). While the Bulletin notes it is not a "foregone" conclusion that non-payroll records are *never* relevant, there is no reason why this case would present an exception such that consultation of records outside of CyberCoders' timekeeping procedure would be relevant. *See* APP. 4 (n.3).

of the Regional Administrator to investigate CyberCoders.[33] The Bulletin is thorough, well-reasoned, and the only pronouncement on the subject, thus the Court should defer to its interpretation. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2423 (2019) (confirming intermediate "*Auer*" or "*Seminole Rock*" standard for deference to agencies' reasonable readings of ambiguous regulations, citing *Auer v. Robbins*, 519 U.S. 452 (1997) and *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945)); *Castellanos-Contreras v. Decatur Hotels LLC*, 622 F.3d 393, 410 (5th Cir. 2010) (Dennis, J., dissenting) (explaining the *Auer/Seminole Rock* standard applies to the FAB and dissenting with majority opinion which did not examine the deferential standard but instead held that changes in the FAB did not apply retroactively where the FAB did not so provide).

## 2. The Demanded Materials Are Irrelevant to Whether CyberCoders Violated the FLSA.

Far from falling lockstep with the Bulletin, the subpoena demands the very records the Bulletin says employers do not have to monitor. *Compare* APP. 1 (providing "employer is **not required to undergo impractical efforts to investigate further to uncover unreported hours of work**" such as going through "**non-payroll records of employees' activities, such as records showing employees accessing their work-issued electronic devices outside of reported hours**" [emphasis added]) *with* APP. 49. (subpoena demanding electronic files showing phone calls, log ins to CyberCoders' proprietary Cyrus system, emails and LinkedIn activity outside of regular hours).

Here, CyberCoders maintains a reasonable policy that lets non-exempt employees report all time worked, and CyberCoders pays for all time worked even if the time was outside of regularly scheduled shifts. *See* APP. 6, 13–20.[34] CyberCoders provided records showing it paid

---

[33] *See, e.g.*, https://www.dol.gov/agencies/whd/field-assistance-bulletins (accessed 1/2/24) (displaying a copy of FAB No. 2020-5 and presenting the Bulletin as current DOL-WHD policy).
[34] Brink Decl. ¶ 9 and Ex. 1.

for all time reported. *See* APP. 7–10.[35] Thus, the only relevant inquiry is whether CyberCoders prevented or discouraged employees from reporting their time worked. *See* APP. 1. The materials demanded in CyberCoders' subpoena do not pertain to any alleged attempt by CyberCoders to prevent or discourage employees from reporting time worked, so the materials are irrelevant to an investigation as to whether CyberCoders violated the FLSA. *See* APP. 1.[36]

The materials demanded also go far beyond records "regarding the wages, hours, and other conditions and practices of employment." 29 U.S.C. § 211. CyberCoders produced comprehensive time records showing all time reported by its employees, and CyberCoders also provided pay data for all employees in Attachment #2 to the Division's subpoena. APP. 7–10.[37] The materials sought relate to CyberCoders' proprietary model for the substantive work of a recruiter and have nothing to do with the FLSA's investigation of whether CyberCoders violated the FLSA and would reveal nothing about CyberCoders' compliance with, or violation of, the FLSA.

If the Division is interested in investigating whether CyberCoders is liable for failing to pay time worked by remote recruiters, no subpoena is necessary, as CyberCoders complied by

---

[35] Brink Decl. ¶¶ 14–15, 21–24.

[36] *See also Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 965 (5th Cir. 2016) ("Although [employer] could have potentially discovered that [employee] was working overtime based on the usage reports … mere 'access' to this information is insufficient for imputing constructive knowledge."); *Newton*, 47 F.3d at 749 (5th Cir. 1995) ("We hold that as a matter of law such 'access' to information does not constitute constructive knowledge that [employee] was working overtime."); *Mosley-Lovings v. AT&T Corp.*, No. 3:38-CV-01145-X, 2020 WL 6865785, at *3 (N.D. Tex. July 31, 2020) ("[I]n the Fifth Circuit such data without something more (like an e-mail informing a company that an employee may be working uncompensated overtime) is legally insufficient to establish actual or constructive knowledge."); *Johnson v. Cameron Int'l Corp.*, No. H-16-262, 2017 WL 3658901, at *6-*7 (S.D. Tex. Aug. 24, 2017) (finding no FLSA violation where supervisor's receipt of after-hours emails was insufficient to establish that employer should have known employee was working overtime); *Nieddu v. Lifetime Fitness, Inc.*, 38 F. Supp. 3d 849, 864, 870 (S.D. Tex. 2014) (finding employee "did not establish [employer's] constructive knowledge based on [employee's] argument that [employer] had access to other records about [employee]").

[37] Brink Decl. ¶¶ 14–15, 21–24.

producing payroll and timekeeping data, as well as written policies and communications regarding timekeeping. *See* APP. 6–10.[38] The records already provided show CyberCoders allowed recruiters to report all time worked, and CyberCoders paid for all time reported. There is no evidence CyberCoders prevented or otherwise discouraged remote recruiters from reporting their time—and significantly—the subject subpoena makes no demand relevant to determining whether CyberCoders maintained timekeeping policies, allowed or interfered with timekeeping, or paid all time reported. *See generally*, *id*. As the subpoena does not pertain to whether CyberCoders violated the FLSA, the subpoena demands materials that are irrelevant, and there is no permissible purpose for the demands.[39]

### 3.    The Demanded Materials Are Irrelevant Given CyberCoders' Policy and Practice of Investigating Employee Concerns Regarding Compensation and Providing Corrected Compensation as Needed.

To the extent any of the remote workers allegedly disregarded CyberCoders' instructions by failing to accurately report all work performed, such instances could not constitute an FLSA violation because that work would have been directly in violation of CyberCoders' clear policies and practices. *Ihegword v. Harris Cnty. Hosp. Dist.*, 929 F. Supp. 2d 635, 663 (S.D. Tex. 2013), *aff'd*, 555 F. App'x 372 (5th Cir. 2014) ("An employee cannot, however, perform overtime work without the employer's knowledge or contrary to the employer's directions and then assert a right to be paid."); *Kirk v. Invesco, Ltd.*, No. H-15-833, 2016 WL 4394336, at *4 (S.D. Tex. Aug. 18, 2016), *aff'd*, 700 Fed. Appx. 334 (5th Cir. 2017) (granting summary judgment in favor of employer where employee was aware she was required to report her time accurately but admitted she "just

---

[38] Brink Decl. ¶¶ 9, 14–15, 21–24.

[39] *See generally, e.g.,* Fed. Proc., Lawyers Ed. (Nov. 2023), Ch. 52 § 1558 (recognizing the "permissible scope of an administrative subpoena under the [FLSA]," requires that the "data sought by the subpoena …be relevant to the inquiry at hand," and "pertain[] to whether FLSA violations have been committed").

randomly" put in the number of hours worked); *Nieddu*, 38 F. Supp. 3d at 864 ("[employer] was entitled to rely on [employee] to comply with [employer's] timekeeping policies and to assume that he was not falsifying his time worked"); *Frye v. Baptist Mem'l Hosp., Inc.*, No. 07-2708, 2010 WL 3862591, at *5 (W.D. Tenn. Sep. 27, 2010) (decertifying class and noting that, "where an employer's formal policy is to compensate employees for all time worked, courts generally require a showing that the employer's common or uniform practice was to not follow its formal, written policy.") (citation omitted).

As discussed above, CyberCoders has a reasonable policy that lets all non-exempt employees report all time worked, it directs employees to report all time work, and it provided records showing that it in fact paid for all time reported. *See* APP. 6, 16, 18.[40] In addition to instructing employees to report all time accurately, CyberCoders has a policy expressly allowing employees to report any concerns they may have regarding their compensation. *See* APP. 6, 16, 18.[41] CyberCoders actively publicizes this policy to employees. *See* APP. 6.[42] When employees raise concerns under that policy, CyberCoders promptly investigates those concerns and, if the investigation confirms that additional work was performed, CyberCoders provides compensation for the work that was done. *See* APP. 16.

The Fifth Circuit has clearly held that an employee "cannot prevail on an FLSA overtime claim if that 'employee ***fails to notify the employer or deliberately prevents*** the employer from acquiring knowledge of the overtime work.'" *Fairchild*, 815 F.3d at 964 (emphasis added) (quoting *Harvill v Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005); *Newton*, 47 F.3d at 748; *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972). In *Fairchild*,

---

[40] Brink Decl. ¶ 9 and Ex. 1, pp. 3, 5.
[41] *Id.*
[42] Brink Decl. ¶ 9–10.

the employer's policies prohibited hourly employees from working overtime without prior approval and required accurate reporting of all hours in the timekeeping system. *Id*. at 963. Nonetheless, the plaintiff "ignored her employer's policy and procedures: she neither sought authorization to work such overtime nor reported the alleged hours through [the employer's] timekeeping system." *Id*. at 965; *see also id., citing White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012) ("When the employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA.").

This is particularly true when the employee does not comply with the formal policy and fails to complain about unpaid hours, and courts regularly find that in such cases the employer had no actual or constructive knowledge of the off-the-clock work. *Pickney v. Express Auto. Grp., Inc.*, No. 4:13-CV-02031, 2014 WL 4794587, at *5 (S.D. Tex. Sep. 25, 2014) (granting summary judgment for employer that automatically deducted meal breaks where plaintiff "admits that despite being aware of the policy, he ***never complained*** about missing lunch and ***never demanded a time sheet adjustment*** for those hours.") (emphasis added); *Ihegword v. Harris Cnty. Hosp. Dist.*, 929 F. Supp. 2d 635, 666-667 (S.D. Tex. 2013), *aff'd*, 555 F. App'x 372 (5th Cir. 2014) (finding for employer where there was no indication that employee "***never advised*** [her supervisor] or anyone else … that the staffing shortage or duties … required her to work overtime) (emphasis added); *Miller v. Texoma Med. Ctr., Inc.*, No. 4:13CV32, 2015 WL 5604676, *3-4, 5 (E.D. Tex. 2015) (finding for employer where it maintained policies and procedures requiring remote employees to report all time worked); *see also Davis v. Food Lion*, 792 F.2d 1274, 1277-78 (4th Cir. 1986) (affirming bench judgment for employer where "the company policy against off-the-clock work was fully enforced …to accept [plaintiff's] theory of the case would mean that Food

Lion should have anticipated that employees would routinely falsify their time records in violation of established company policy").

Here, then, CyberCoders could not be liable for overtime violations arising out of remote workers' alleged off-the-clock work that was performed outside of work hours, was not accurately reported, and was not reported to CyberCoders as a concern—all in violation of CyberCoders' express, formal, and enforced policies, and in particular in violation of the well-publicized policy and practice of allowing employees to report such concerns so that they may be investigated and addressed. Significantly, ***none*** of the massive and far-reaching data requested in the subpoena would change this analysis, as none of that data could support a contention that CyberCoders had actual or constructive knowledge of any such off-policy work and activities.

Thus, the subpoena does not pertain to whether CyberCoders violated the FLSA, the materials demanded are irrelevant, and there is no permissible purpose for the demands.

**B.      The Subpoena Should Be Quashed Because It Violates the APA as an Unannounced and Unjustified Change in DOL Policy.**

Under the APA, an agency changing longstanding enforcement policy must provide a reasoned explanation for the change, must display awareness it is changing position, and must show there are good reasons for the new policy. S*ee Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1986); 5 U.S.C.S. § 553(c) and § 706 (providing the reviewing court shall hold unlawful and "set aside if found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). Agency reversals of policy will be found unlawful if the agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n*,

463 U.S. at 43. The agency must also show it considered the regulated community's longstanding reliance interests before reversing enforcement policies. *Encino Motorcars, LLC*, 579 U.S. 211, 222 (2016). Agency action that violates these standards will be found to be unlawfully arbitrary and capricious. *See id*; *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 56; *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 515 (2009) ("An agency may not . . . depart from a prior policy *sub silentio* or simply disregard rules that are still on the books.").

The Division's Bulletin, issued by the Administrator as a statement of the Division's policy, is specific to circumstances like this, where an employer is investigated for potential violation of the FLSA based on alleged unreported work performed by remote employees. The Administrator specifically stated the DOL's policy is that an employer is not required to "sort[] through" non-payroll information such as "records showing employees accessing their work-issue electronic devices . . . to determine whether its employees worked hours beyond what they reported." APP. 3. The only possible scenario where the subpoena is relevant is if CyberCoders had a duty to sort through these materials and may have violated the FLSA by failing to do so. This would be a complete 180 degree turn on the Division's stated policy. The Division provides no reasoning for reversing its policy, and the Division's reversal of its long-standing policy by way of the subpoena to CyberCoders violates the APA and must be quashed as not issued under lawful authority or for lawful purpose under *Walling*.

### C. The Subpoena Should Be Quashed, and/or a Protective Order Should Be Entered Because the Demands Are Overbroad and Unduly Burdensome.

As the Supreme Court observed in *Morton Salt*, "a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under

inquiry as to exceed the investigatory power." 338 U.S. at 652.[43] Even if the Court finds the Division's subpoena demands relevant information, the Court should grant CyberCoders' motion to quash because the demands are too broad and compliance would require a massive undertaking. *See, e.g., Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 255 (S.D. Ohio 2011) (granting motion to quash with respected to limited group of subpoenas seeking relevant information where request was too broad).

In *La Piedad*, the Eighth Circuit found the DOL's subpoena invalid and noted that because it demanded the company produce documents reflecting the business activities of its shareholders "without regard to where those documents are located or whether they pertain to" the company's business, the subpoena "would doubtless not be enforced as unreasonably broad." 894 F.3d at 952 and n.1; *see also, e.g.*, *E.E.O.C. v. Sears, Roebuck & Co.*, No. CIV.A10CV00288WDMKMT, 2010 WL 2692169, at *9 (D. Colo. Jun. 8, 2010), *report and recommendation adopted*, 2010 WL 2692168 (D. Colo. Jul. 6, 2010) (finding EEOC subpoena overboard where, as does the subpoena here, it demanded nationwide information, and limiting subpoena to omit requests for national origin information irrelevant to claims being investigated). In the very least, the Division has made this same type of "unreasonably broad" request here.

Here, CyberCoders reasonably estimates compliance with the Division's subpoena demands would require at least ***2,085 hours of labor*** by CyberCoders employees over at least nine months; ***time to write, test and implement new code***; ***and engagement of a specialized Enterprise***

---

[43] *See also, Walling*, 327 U.S. at 202-03 (explaining that while the unique circumstances of each case challenging governmental authority to search private citizens and corporations are considered, "the border along which the cases lie is one where government intrudes upon different areas of privacy and the history of such intrusions has brought forth some of the stoutest and most effective instances of resistance to excess of governmental authority"); Fed. R. Civ. P. 45(d)(1) (directing party serving subpoena "shall take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena").

***Vault consultant***. APP. 79–84.[44] This would result in costs of at least: $208,500 for labor; $125,000 annually to process and host data; and other expenses including those related to engaging a consultant. APP. 79–84.[45] The massive scope of the subpoena is evident on its face, for example, the fourth category demands "[a]ll Documents and Electronic Files sufficient to show daily communications" sent by 765 employees and former employees working remotely from their homes across 36 states for over a four-year period. APP. 5–6.[46] Furthermore, the demand requires that CyberCoders somehow cull such massive amount of data and isolate communications during specific times of the day and days of the week. *See* APP. 81–83.[47] The Court must also reject this portion of the Division's subpoena requiring CyberCoders to create records and reports for the Division. *Acosta v. Fusilli at Miller Place, Inc., No. 18-MC-426 (DRH)(SIL)*, 2018 WL 4635735, at *6 (E.D.N.Y. May 7, 2018), *report and recommendation adopted*, 2018 WL 3302183 (E.D.N.Y. Jul. 5, 2018) (citations omitted) (concluding "The Court agrees with Respondents that they need not create new documents for the sole purpose of responding to the Administrative Subpoena.").[48]

The Division's demands, which ultimately require CyberCoders do a deep and massive dive into its communication and applicant tracking electronic records to create a detailed Frankenstein-creation of what ***could*** have been thousands of workdays for 765

---

[44] Brotherton Decl. ¶¶ 17, 23, 26, 31, 36-37, 41, 43, 46.
[45] Brotherton Decl. ¶¶ 17, 23, 26, 31, 34-37, 41, 43-46.
[46] Brink Decl. ¶ 7.
[47] Brotherton Decl. ¶¶ 32–43.
[48] *See* APP. 99, FOH dated 9/29/2016, at Chapter 86b01(b)(5)(b) (stating "[b]asic information, such as payroll records … may always be requested. However, we cannot ask an employer to create new documents."). Each of the Division's subpoena demands is also impermissibly broad because they seek information beyond the three-year period which is the maximum statute of limitations for an FLSA claim. *See* 29 U.S.C. § 255(a) (providing for a default statute of limitations of two years, and a three-year period for willful violations). *Cf. Herman v. Crescent Publ'g Grp., Inc.*, No. 00 CIV. 1665 SAS, 2000 WL 1371311, at *9 (S.D.N.Y. Sept. 21, 2000) (finding the DOL's subpoena demands seeking documents related to working conditions with no time limitation were overly broad and denying the DOL's request to enforce such demands).

**remote employees, would significantly burden the company**. *See* APP. 79–84.[49] Nor has there been any showing that the Division's interests in the demanded materials outweighs CyberCoders and the 765 remote employees' reasonable expectations of privacy. *See Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018) (holding that allowing government access to cell-site records contravenes the reasonable expectation of privacy afforded by the Fourth Amendment, even in public places, noting "the time-stamped data provides an intimate window into a person's life"). Just as people have a reasonable expectation of privacy in their location over time, people have a reasonable expectation of privacy in their use of electronic systems throughout their workday, which would be violated by producing time-stamped data showing circumstantial and hypothetical workdays as demanded in the subpoena to CyberCoders.

The Court should reject the Division's broad sweep for any circumstantial evidence (despite the availability of time records) and the Division's attempt to force CyberCoders' hand to create hypothetical reenactments of hundreds of employees' workdays over several years. *See generally, Katz v. United States*, 389 U.S. 347, 358–59 (1967) (holding constitutional "considerations do not vanish when the search in question is transferred from the setting of a home, an office, or a hotel room to that of a telephone booth. Wherever a man may be, he is entitled to know that he will remain free from unreasonable searches and seizures;" finding electronic surveillance of telephone booth violated Fourth Amendment). At a minimum, the Court should order the parties to meet and confer "to determine a reasonable scope of production on a manageable timetable." *Walsh v. Katsilometes*, No. 20-36002, 2021 WL 4811376, at *1 (9th Cir. Oct. 15, 2021) (unpublished) (vacating district court order enforcing DOL subpoena, ordering parties to work together to narrow scope of subpoena).

---

[49] Brotherton Decl. ¶¶ 15–46.

### D.      Venue Properly Lies with this Court.

Federal Rule of Civil Procedure 45 states that a motion to quash or modify a subpoena may be brought in the "**court for the district where compliance is required**." FED. R. CIV. P. 45(d)(3) (emphasis added). *See, e.g., New Orleans Pub. Serv., Inc. v. Brown*, 507 F.2d 160, 165 (5th Cir. 1975) ("No different standards should be applied to the handling of this subpoena than is ordinarily the rule under Rule 45(b) Federal Rules of Civil Procedure").[50] Federal Rule of Civil Procedure 81(a)(5) provides that the Federal Rules of Civil Procedure apply to proceedings to compel the production of documents through a subpoena issued by an agency under a federal statute "except as otherwise provided by statute, by local rule, or by court order in the proceedings." The FLSA does not "otherwise provide" for proceedings regarding administrative subpoenas, and thus, Rule 45 applies.[51]

Even if Rule 45 does not govern,[52] it is well-established that a subpoenaed employer may bring a motion challenging an administrative subpoena in district court. *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984) (holding that while the Secretary of Labor may issue a subpoena without warrant, Supreme Court precedent "nonetheless provide[s] protection for a subpoenaed employer by allowing him to question the reasonableness of the subpoena, before suffering any penalties for refusing to comply with it, by raising objections in an action in district court" and clarifying the case law "in no way leaves an employer defenseless against an unreasonably

---

[50] *Superseded by statute on other grounds, as recognized in Dresser Indus. Valve Operations v. E.E.O.C.*, 613 F. Supp. 1, 3 (W.D. La. 1984).

[51] While Rule 45 and other provisions of the Federal Rules of Civil Procedure apply, this Court has discretion to apply the rules in a more flexible manner.

[52] While the Notes of Advisory Committee on Rules – 1937 commented that Rule 45 does not apply to the enforcement of a subpoena issued by administrative officers or commissions pursuant to statutory authority, the Advisory Committee recognized that district courts are authorized to enforce administrative subpoenas as "regulated by appropriate statutes" and Rule 45 explicitly applies to the district court's issuance of a subpoena.

burdensome administrative subpoena requiring the production of documents"). The general venue provision 28 U.S.C. § 1391(b), which governs venue for FLSA claims,[53] provides that an action may be brought in any judicial district in which any defendant resides or where a substantial part of the events or omissions giving right to claim occurred.

Venue properly lies with this Court under both Rule 45 and the general venue provision, and this Court has broad discretion in determining whether venue is proper. While the Division's subpoena was issued by the San Diego office, it demands information about CyberCoders' operations and employees nationwide. APP. 11, 43–75.[54] Many of those operations and employees are in Texas. APP. 6.[55] Because the subpoena demands materials regarding employees and former employees of CyberCoders in Fort Worth, Texas "compliance" is required here, where the subpoena recipient is also located, and Rule 45 is satisfied. *See* APP. 6;[56] *see also* FED. R. CIV. P. 45(c)(2)(b) (defining "place of compliance" as limited to "a place within 100 miles" of the subpoena recipient).

Furthermore, venue is proper because a substantial part of the alleged events giving right to a claim occurred in Fort Worth, because the largest concentration of individuals who were identified by the Division in Texas are in Fort Worth. APP. 6;[57] *see also*, 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in … a judicial district in which a ***substantial*** part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated.") (emphasis added). That the subpoena is "returnable" in California is "not determinative of the place of inquiry." *S. Int'l Trade Comm'n v. ASAT, Inc.*, 411

---

[53] *Goldberg v. Wharf Constructers*, 209 F. Supp. 499, 501 (N.D. Ala.1962).
[54] Brink Decl. ¶ 29, Ex. 12.
[55] Brink Decl. ¶ 8.
[56] Brink Decl. ¶ 8.
[57] Brink Decl. ¶ 8.

F.3d 245, 249 (D.C. Cir. 2005) (determining challenge jurisdiction and venue challenges to subpoena issued by United States International Trade Commission). It is not necessary that "a *majority* of events giving rise to the claim occurred" here, "but rather [venue] may be established in any judicial district in which a *substantial* amount of events occurred." *Continental W. Ins. Co. v. Liepke Invs., Ltd.*, No. 3:10-CV-1701-P, 2011 WL 13216993, at *2 (N.D. Tex. Mar. 8, 2011) (finding venue improper where substantial part of the events or omissions giving rise to the cause of action occurred outside the jurisdiction as "[s]ubstantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute") (internal quotations omitted); *TIG Insurance v. NAFCO Insurance*, 177 F. Supp. 2d 561, 567 (N.D. Tex. 2001) (finding exchange of communications in Dallas sufficient to establish venue there). Accordingly, venue is properly with this Court.

## V.    CONCLUSION

For the above-stated reasons, this Court should quash the Division's subpoena and grant CyberCoders such other relief the Court finds is justified.

Dated: January 18, 2024

Respectfully submitted,

*/s/ Kimberly R. Miers*
Kimberly R. Miers
State Bar No. 24041482
kmiers@littler.com
Ross G. Reyes
State Bar No. 24105707
rgreyes@littler.com

Littler Mendelson, P.C.
100 Congress Avenue, Suite 1400
Austin, TX 78701
512.982.7250
512.982.7248 (Fax)

*Mailing Address for Ross G. Reyes*

Littler Mendelson, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201.2931
214.880.8100
214.880.0181 (Fax)

**ATTORNEYS FOR PETITIONER
CYBERCODERS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

On January 18, 2024, the foregoing document was filed via the Court's CM/ECF filing system and served to Respondent via certified mail on January 18, 2024, as follows:

John Rainwater
Regional Solicitor
U.S. Department of Labor
525 South Griffin Street, Suite 501
Dallas, TX 75202-5020

Marc A. Pilotin
Regional Solicitor
U.S. Department of Labor
90 7th Street, Suite 3-700
San Francisco, CA 94103-1516

Jose L. Medina
Assistant District Director
U.S. Department of Labor, Wage and Hour Division
770 The City Drive South, Suite 5700
Orange, CA 92868

*/s/ Kimberly R. Miers*
Kimberly R. Miers

4856-7388-0986.8 / 100716-1011